DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:06-CR-271 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | MEMORANDUM OPINION |
|  | ) |  |
| ANDRE MARTIN, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

On November 20, 2007, defendant petitioner filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (ECF 77), alleging misconduct on the part of DEA Agent Lee Lucas, who was then the subject of a Department of Justice investigation.  On December 30, 2007, this Court granted the government 30 days to respond to defendant's motion. ECF 79.  The government moved on January 7, 2009 to hold defendant's motion in abeyance due to the ongoing investigations against Agent Lucas and others. ECF 80.  The Court granted the motion and directed the government to file an updated status report regarding the Department of Justice investigations by April 15, 2009. ECF 81.  The government filed its status report on April 15, 2009, indicating that it would be in the defendant's best interest and the public's best interest to continue to hold defendant's motion in abeyance until the completion of the investigation. ECF 82.

Following the conclusion of the investigation and the subsequent indictment of DEA Agent Lee Lucas, defendant filed a motion for immediate release (ECF 85) on May 21, 2009 and

(1:06-CR-271)

requested an evidentiary hearing on the matter. Since then, defendant has also filed a motion for

bond (ECF 87) and a motion to appoint counsel (ECF 88).

On May 27, 2009, the Court directed the government to respond within 30 days to

defendant's motion (ECF 77) to vacate his conviction and sentence. ECF 86.  On June 25, 2009

the government filed a response in opposition to defendant's motion to vacate his conviction and

sentence. ECF 89.

For the reasons set forth in this opinion, the defendant's motion to vacate (ECF 77)

pursuant to 28 U.S.C. § 2255 is denied. Defendant's motion for immediate release (ECF 85) and

motion for bond (ECF 87) are also denied as moot.

Upon review of the record, the Court has determined that the defendant is not entitled to

an evidentiary hearing on his § 2255 claims. For that reason and the reasons set forth in this

opinion, defendant's motion to appoint counsel for § 2255 proceedings (ECF 88) is denied as

moot.

## I. BACKGROUND

### A. Facts Surrounding Martin's Conviction and Sentencing

In April, 2006, Special Agent Lee Lucas ("Lucas") of the United States Drug

Enforcement Administration ("DEA") initiated an investigation of defendant Andre Martin

("Martin") based on a number of sources implicating Martin in drug trafficking activity. On May

1, 2006, Lucas arranged for a confidential informant to engage in a "controlled buy" to purchase

crack cocaine from Martin.  After the purchase was executed, and the substance produced field

2

(1:06-CR-271)

tested positive for cocaine, Lucas obtained a search warrant for Martin's home, where Martin

was to meet with a second confidential informant the following day.

On May 2, 2006, Lucas and other officers arrived at Martin's apartment and placed

Martin under arrest based on their belief that he was about to execute a second drug deal.  The

officers proceeded to search Martin's home and discovered a Glock .45 caliber pistol and a

Taurus .357 caliber revolver, which were later determined to have traveled in or affected

interstate commerce.  Martin admitted to the officers that the firearms belonged to him.

Martin then led the officers to Martin's uncle's apartment, and upon the uncle's consent,

the officers searched the premises.  During their search, the officers discovered what was

determined to be 142.10 grams of crack cocaine in the pocket of a Cleveland Cavaliers jacket.

Martin stated that the crack belonged to him.

On June 1, 2006, Martin was indicted on three counts, including (1) distribution of crack

cocaine, (2) possession of crack cocaine, and (3) possession of a firearm as a convicted felon. [1]

ECF 9.

Following a suppression hearing and the Court's denial of Martin's motion to suppress

his admissions that the firearms and crack cocaine belonged to him, Martin entered into a plea

agreement with the government on December 6, 2006.  Under the agreement, the government

would move for dismissal of Count 1, and Martin would enter a plea of guilty for Counts 2 and

3.  The agreement also provided for a recommended three-level reduction based on acceptance of

---

[1]Martin had been previously convicted in the Cuyahoga County Court of Common Pleas
for aggravated assault and carrying a concealed weapon. ECF 9 at 2.

3

(1:06-CR-271)

responsibility, and the government agreed to consider a further reduction if the government

determined that Martin had rendered "substantial assistance in the investigation or prosecution of

individuals." ECF 65 at 2-3.

During the plea hearing the Court reviewed with Martin the consequences of entering a

guilty plea, including the Constitutional rights he would be giving up by pleading guilty. *Id*. at 7,

12-14.  The Court then asked the government to provide the factual basis for Martin's guilty

pleas.  Government counsel described the events of May 2, 2006, including Martin's admissions

that both the firearms and the crack cocaine belonged to him.  The government also indicated

that Martin had sustained two prior convictions in Cuyahoga County Court of Common Pleas for

crimes punishable by a term exceeding one year. *Id.* at 20-23.  The Court found that there was a

factual basis for Martin's guilty pleas, and neither Martin nor his counsel objected. *Id.* at 25.

When asked by the Court in accordance with *Boykin v. Alabama*, 395 U.S. 238 (1969) if

his guilty pleas were voluntary and constituted an exercise of his own free will, Martin answered

in the affirmative.  He confirmed that no one was threatening or requiring him to plead guilty,

and that he was satisfied with the representation provided by defense counsel. ECF 65 at 25.

 **B. Investigation and Indictment of DEA Agent Lee Lucas**

In May 2007, the Department of Justice initiated an investigation of Special Agent Lucas

after the United States Attorney's Office learned that Jerrell Bray ("Bray")–a confidential

informant used by Lucas to make "controlled buys" as part of a narcotics investigation in

Mansfield, Ohio between September 6, and October 25, 2005–had admitted during an interview

with the Federal Public Defenders to deliberately misidentifying targets during his operations in

4

(1:06-CR-271)

Mansfield.  Bray also admitted to giving perjured testimony during two federal prosecutions arising out of those investigations, and pled guilty to the charges returned against him in a seven-count information. ECF 1 (Case No. 1:07-CR-650).

Following a Department of Justice investigation that was initiated as a result of Bray's admissions, an 18-count indictment was returned against Agent Lucas. ECF 1 (Case No. 1:09-CR-0222).  The charges in the indictment relate to Lucas's involvement in the Mansfield investigation and his supervision of Bray between September 6, 2005 and October 25, 2005. According to the indictment, Lucas deprived certain individuals of their civil rights, knowingly made false statements, corruptly impeded the administration of justice, and knowingly gave false or perjured testimony in two prosecutions arising out of the Mansfield investigations, including *United States v. France* and *United States v. Nabors, et al. Id.* at 2-10.  Additionally, the indictment alleges that Lucas provided false and misleading evidence to federal prosecutors, and concealed evidence favorable to the accused during proceedings arising out of the Mansfield investigations. *Id.* at 11, 13, 15. The indictment does not, however, allege that Lucas engaged in any similar misconduct while investigating drug-related criminal activity in the Cleveland, Ohio area, or during the investigation or proceedings against Martin.

**C. Martin's Motion to Vacate Conviction and Sentence**

In his motion to vacate, Martin asserts three grounds for relief, including ineffective assistance of counsel (Ground I); prosecutor misconduct (Ground II); and that his guilty plea was unknowingly and involuntarily entered (Ground III).

(1:06-CR-271)

In asserting his claim for ineffective assistance of counsel under Ground I, Martin contends that defense counsel (1) failed to investigate the government's case against Martin when rumors began to circulate regarding Agent Lee Lucas's involvement in a "draconian court government snitch program;" (2) failed to seek exculpatory evidence from the government about Agent Lucas's past activities and unethical conduct; (3) failed to interview witnesses favorable to Martin's defense who were "similarly situated" with regard to Agent Lucas's involvement in their convictions; (4) failed to advise Martin of the "mere presence and association" defense; and (5) aided the government in obtaining a coerced plea agreement based on false information counsel knew or should have known to be suspect. ECF 77 at 1-2.

In alleging prosecutor misconduct under Ground II, Martin alleges that his Fifth Amendment rights were violated, as counsel for the government (1) knew or should have known that Agent Lucas was committing perjury, and encouraged that conduct; (2) knew that Agent Lucas was committing perjury by targeting ex-convicts; and (3) withheld favorable impeachment and/or exculpatory evidence that showed Agent Lucas's practice of undermining the federal court system. *Id.* at 3.

In Ground III, Martin alleges that his guilty plea was unknowingly and involuntarily entered based on the government's alleged failure to disclose exculpatory evidence regarding the ongoing investigation against Agent Lucas.  Martin asserts that if he had known that Agent Lucas was under investigation, he would have chosen a jury trial over the plea agreement, as "no reasonable trier of fact could have found Martin guilty based on tainted hearsay evidence" submitted by Agent Lucas. *Id.* at 2-4.

6

(1:06-CR-271)

## II. LAW & ANALYSIS

### A. Martin's Ineffective Assistance of Counsel Claims[2] are Barred by His Entry of a Guilty Plea

The Supreme Court has long recognized "the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings." *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) (citing *Brady v. United States*, 379 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970)).

The Supreme Court reaffirmed the "Brady trilogy" in *Tollet v. Henderson*, 411 U.S. 258 (1973), noting that

> "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea*[...]"

411 U.S. at 267 (emphasis added).  Under *Tollet* and the *Brady* trilogy, a defendant's guilty plea "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." *Menna v. New York*, 423 U.S. 61, 62 (1975). Ineffective assistance of counsel claims are among those constitutional violations rendered irrelevant once a defendant has entered a guilty plea. *See United States v. Stiger*, 20 Fed. Appx. 307 (6th Cir.2001)(unpublished disposition)(ineffective assistance of counsel claim relates to "earlier alleged constitutional deprivations," rather than the voluntary nature of a defendant's guilty plea)

---

[2]This section will address the claims advanced under Ground I, subparts (1), (2) and (3) of Martin's motion (ECF 77).

7

(1:06-CR-271)

(*citing United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992)(pre-plea ineffective assistance of counsel claims are waived by entry of guilty plea).

The Court accepts the government's assertion that the claims advanced in subparts (1), (2) and (3) of Ground I constitute "pre-plea claims of ineffective assistance of counsel," as they relate solely to actions counsel could have taken and which Martin believes would have increased his chances of prevailing. ECF 89 at 22-23.  Accordingly, those claims are "rendered irrelevant" and thus barred by Martin's entry of a guilty plea.

**B. Martin's Attacks on the Voluntariness of His Guilty Plea Lack Merit**

By pleading guilty in a criminal case, a defendant waives not only his or her constitutional right to a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  Therefore, the Constitution requires that a defendant entering a guilty plea does so "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

The Court recognizes that the claims advanced in subparts (4) and (5) of Count I may be construed as related to the voluntariness of Martin's guilty plea.  These claims, along with those pertaining explicitly to the voluntariness of Martin's plea (Grounds II and III), will be addressed below.

1. Martin's claims alleging counsel's failure to advise of a defense based on "mere presence and association" and counsel's cooperation with the government

8

(1:06-CR-271)

<u>in obtaining a coerced plea agreement[3] are subject to summary dismissal as they
are conclusory allegations that contradict the record.</u>

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v.
Allison,* 431 U.S. 63, 73-74 (1977).  Thus when a defendant has made certain representations
before the court in a plea hearing, and the judge has made certain findings in accepting the
defendant's plea, that information "constitute[s] a formidable barrier in any subsequent collateral
proceedings." *Id.*  Therefore when a defendant presents subsequent allegations, "the critical
question is whether these allegations, when viewed against the record of the plea hearing, were
so 'palpably incredible,' as to warrant summary dismissal." *Id.*, citing *Herman v. Claudy*, 350
U.S. 116, 119 (1956).  Additionally, when such allegations are "vague or conclusory" and
"unsupported by specifics," they are particularly deserving of summary dismissal. *Blackledge v.
Allison*, 431 U.S. at 73-74.

In subpart (4) of Count I, Martin asserts that defense counsel failed to properly advise
him of a defense based on "mere presence and association." ECF 77 at 3.  Martin does not
however, indicate how this alleged failure impacted on his decision to plead guilty.
Additionally, the facts of the case do not lend themselves to an inference that Martin would have
pleaded differently had he been advised of the defense, as Martin's criminal responsibility rests
entirely on his own admitted actions, and not on his association with other persons.  Martin's
allegations are therefore so "patently frivolous," that summary dismissal is warranted. *Herman v.
Claudy,* 350 U.S. at 119.

---

[3]This section will address the claims advanced in Ground I, subparts (4) and (5) of
Martin's motion (ECF 77).

9

(1:06-CR-271)

In subpart (5) of Count I, Martin alleges that counsel aided the government in obtaining a coerced plea agreement based on "false information." *Id.* However, Martin does not identify what false information was allegedly used, and does not explain how the plea agreement was "coerced." More importantly, Martin's allegations conflict directly with his representations that his pleas were voluntary, and the Court's subsequent finding of the same during the plea hearing. ECF 65 at 23, 25. Because Martin's claim is "unsupported by specifics," and "palpably incredible" in light of the record, it is worthy of summary dismissal.

> 2. Martin's claim that the government's failure to disclose impeachment and/or exculpatory evidence rendered his guilty plea involuntary[4] is either foreclosed by *Ruiz*, or fails because it does not detract from the factual basis for his conviction.

As part of its "fair trial" guarantee, the Constitution requires the government to disclose any evidence "favorable to an accused where the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87. The government's obligation extends to evidence that is "favorable to the accused, either because it is *exculpatory*, or because it is *impeaching* [...]." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999) (emphasis added).

In Grounds II and III, Martin alleges that the government withheld exculpatory and/or impeachment evidence in violation of *Brady v. Maryland*,[5] and thereby rendered his guilty plea

---

[4]This section will address the claims advanced under Grounds II and III of Martin's motion (ECF 77).

[5]The Court recognizes that *Brady* only requires the government to disclose evidence "in its possession." *United States v. Jones,* 399 F.3d 640, 646-47. Martin does not allege that the government possessed information regarding the investigation of Agent Lucas prior to his entry of guilty pleas, nor is such a conclusion logically compelled. The events sparking the investigation of Agent Lucas–Jerrell Bray's admissions to the Federal Public Defender on May 21, 2006–did not occur until 5 ½ months after Martin pled guilty.

(continued...)

10

(1:06-CR-271)

involuntary. ECF 77 at 3-4.  As discussed *supra*, Martin specifically alleges that if the government had disclosed that Agent Lucas was the subject of a Department of Justice investigation that ultimately led to the release of other defendants, Martin would have chosen a jury trial rather than entering a plea of guilty, as "no reasonable trier of fact could have found [Martin] guilty based on tainted hearsay evidence." *Id.* at 4.

Martin classifies the information allegedly withheld as both "exculpatory" and "impeachment" evidence.  However, it is unnecessary for the Court to decide whether information regarding the investigation of Agent Lucas would in fact qualify as "impeachment" or "exculpatory," as Martin's claims fail under either analysis.

In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court rejected the notion that a guilty plea is involuntary "unless the prosecutors first made the same disclosure of material *impeachment* information that the prosecutors would have had to make had the defendant insisted upon a trial." 536 U.S. at 629 (emphasis added).  In reaching its decision, the Supreme Court reasoned that impeachment information is special, as it is "more closely related to the *fairness* of a trial than to the *voluntariness* of the plea." *Id.* at 633 (emphasis in original). Therefore under *Ruiz*, the possibility that Martin could have impeached one of the government's principal witnesses, such that "the government may have had a weaker case than he anticipated" is "immaterial to the validity of [his] guilty plea." *United States v. Wells*, 2008 WL 215814 (6th Cir.).

---

[5](...continued)

(1:06-CR-271)

Post-*Ruiz* authorities appear divided on whether *Ruiz*'s holding extends to exculpatory as well as impeachment evidence. *Compare United States v. Conroy*, __ F.3d__, 2009 WL 1164497 at **4 (5th Cir.) (*Ruiz* never distinguishes between exculpatory and impeachment evidence), with *McCann v. Mangialiardi*, 337 F.3d 782, 787-88 (7th Cir.2003)(*Ruiz* indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence). If *Ruiz* is construed as extending to exculpatory evidence, then Martin's claim is once again foreclosed. However, it is unnecessary for the court to decide whether *Ruiz* does in fact extend, as Martin's claim also fails under a pre-*Ruiz* analysis.

In the pre-*Ruiz* case of *Campbell v. Marshall*, 769 F.2d 314 (6th Cir.1985), the Sixth Circuit Court of Appeals held that the state prosecutors' failure to disclose evidence that was potentially exculpatory did not render the defendant's guilty pleas involuntary. Central to the court's decision was its finding that a factual basis for the pleas had been established at the plea proceeding, and that the discovery of new information did not in any way detract from that factual basis.

During the plea hearing in the present case, the Court determined that there was a factual basis for the guilty plea based on the government's description of the events of May 2, 2006, including Martin's own admissions that the firearms and crack cocaine belonged to him. ECF 65 at 20-25. As the government points out, Martin does not claim that the information allegedly withheld would have demonstrated his factual innocence (ECF 89 at 30), nor can such a conclusion be logically drawn from the information itself.

12

(1:06-CR-271)

The investigation against Lucas and his subsequent indictment stemmed from his activities during the Mansfield investigations conducted between September 6, 2005 and November 8, 2005, when Lucas was working with Jerrell Bray.  However, Bray was not involved in the investigation against Martin, and Lucas's indictment contains no allegations of similar misconduct during investigations in the Cleveland area, or in connection with other informants.   Also absent from the indictment are any allegations of misconduct during the investigation or proceedings against Martin.  While Martin alleges that Lucas committed perjury during his case, he does not identify what "false information" Lucas provided, nor how information regarding the Department of Justice investigation would have detracted from the factual basis for Martin's conviction–his own admission of responsibility.  Therefore even if the information regarding Agent Lucas is somehow exculpatory in nature, it does not render Martin's plea involuntary.

### C. Martin is Not Entitled to an Evidentiary Hearing

A prisoner who files a motion to vacate under § 2255 is entitled to "a prompt hearing" so that the court may "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. In cases where a factual dispute is raised, a hearing is mandatory so that the court may determined the truth of the plaintiff's allegations. Turner v. U.S., 183 F.3d 474, 477 (6th Cir.1999). However where allegations "cannot be accepted as true because they are contradicted by the record, [are] inherently incredible, or [are] conclusions rather than statements of fact," a hearing is not required. *Arredondo v. U.S.*, 178 F.3d 778, 782 (6th Cir.1999). Moreover, where "the record conclusively shows that the petitioner is entitled to

(1:06-CR-271)

no relief," a defendant is not entitled to an evidentiary hearing on a § 2255 motion. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir.1996)).

Martin has raised no factual disputes in his motion to vacate, as his claims are primarily questions of law. As discussed *supra*, Martin's ineffective assistance of counsel claims are foreclosed under *Brady* and Tollet, and his attacks on the voluntariness of his guilty plea are most likely foreclosed under Ruiz, unless the evidence regarding agent Lucas is somehow found to be exculpatory. However, even if the evidence is construed as exculpatory, a hearing is unnecessary. To the extent that Martin's claims are not foreclosed by law, they are conclusory allegations which are incredible in light of the record. Martin's factual guilt has been firmly established, and nothing in the record, including evidence produced at the suppression hearing, Martin's admission of guilty during the plea hearing, and the alleged misconduct contained 18-count indictment against Agent Lucas, shows that Martin is entitled to any relief. As the merits of Martin's allegations may be determined from the existing record, no hearing is required.

### III. CONCLUSION

Martin's constitutional claims, with the exception of those claims attacking the voluntariness of his guilty plea, are barred under *Brady* by his entry of a guilty plea.

Although Martin makes several claims regarding the voluntary nature of his guilty plea, those claims are lacking in merit.  He claims that counsel failed to disclose the possible defense of "mere presence and association" and that counsel aided the government in obtaining a coerced plea agreement.  However, these allegations are vague and conclusory in nature, and do not

14

(1:06-CR-271)

suffice to overcome Martin's statements under oath that he was satisfied with counsel's assistance and that his pleas were entirely voluntary.

Martin also claims that his guilty plea was involuntary and unknowing due to the government's failure to disclose impeachment and/or exculpatory information regarding the investigation against Agent Lucas.  However, if the information is construed as impeachment evidence, Martin's claim is foreclosed by the Supreme Court's holding in *Ruiz* that a failure to disclose impeachment evidence does not render a guilty plea involuntary.  If the information is construed as exculpatory evidence, Martin's claim may also be foreclosed if *Ruiz* is interpreted to extend to exculpatory as well as impeachment evidence.  However even if *Ruiz* does not extend, Martin's claim fails nonetheless, as he has not and cannot show that the information regarding Agent Lucas would detract from the factual basis for his conviction.

The essence of Martin's argument appears not to be that he is factually innocent or that the basis for his conviction is somehow undermined, but rather that he would have made a different choice in the pre-trial process had he known of the investigation against Lucas. However, it is not necessary for a defendant to be aware of every circumstance prior to entering a valid guilty plea, and there is "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the [government] would have had a weaker case than the defendant had thought [...]" *Brady v. United States.* 397 U.S. 742, 748 (1970).

15

(1:06-CR-271)

Accordingly, defendant's motion to vacate (ECF 77) pursuant to 18 U.S.C. §2255 is denied. Defendant's motion for immediate release (ECF 85), and motion for bond (ECF 87) are denied as moot.

Because Martin is not entitled to an evidentiary hearing, his motion to appoint counsel (ECF 88) is also denied as moot.


IT IS SO ORDERED.


     s/ David D. Dowd, Jr.

Date     7/21/2009      David D. Dowd, Jr.

                                               U.S. District Judge

16