DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Andre Martin, ) | |
| ) | CASE NO. 1:06 CR 271 |
| Petitioner, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| United States of America, ) | |
| ) | |
| Respondent. ) | |
| ) | |

I. History of the Case

The defendant was indicted June 1, 2006. The indictment contains three counts. The first count charges the defendant with distribution of crack cocaine on May 1, 2006. Count 2 charges the defendant with possessing with intent to distribute more than 50 grams of crack cocaine. Count 3 charges the defendant with possessing, on May 2, 2006, two firearms which had traveled in interstate commerce and against the background that the defendant was a convicted felon.

The defendant entered pleas of guilty to Counts 2 and 3 after an evidentiary hearing was conducted on December 7, 2006 in response to his motion to suppress and which motion was denied. The defendant then prosecuted an appeal to the Sixth Circuit which affirmed the defendant's conviction and sentence to a term of 240 months.

The defendant then sought habeas relief by a *pro se* motion filed on November 20, 2008 in which he contended that he had been denied the effective assistance of counsel, that the prosecutor had engaged in misconduct in violation of the defendant's Fifth Amendment rights

(1:06 CR 271)

and finally that his guilty plea was not knowing and intelligent made in violation of his rights under the Fifth Amendment. The substance of his contentions were anchored in the proposition that DEA Special Agent Lee Lucas had committed perjury in his case.

The only time Lee Lucas testified following the defendant's indictment was in response to the defendant's motion to suppress which contended that the defendant's unlawful interrogation, detention and arrest on May 2, 2006 was in violation of the Constitution.

The government filed a response to the defendant's motion for habeas relief on June 25, 2009. *See* Docket No. 89.

On July 21, 2009, this Court filed a Memorandum Opinion denying the application for habeas relief. *See* Docket No. 91.

Subsequently, the petitioner-defendant filed an application for a certificate of appealability. *See* Docket No. 99. The *pro se* application for a certificate of appealability lists the following grounds for a certificate of appealability, i.e.,

> Ground 1. Ineffective assistance of counsel in violation of appellant's Sixth Amendment rights under the Constitution and laws of the United States.
>
> Ground 2. Ineffective assistance of appellate counsel in violation of appellant's Sixth Amendment rights under the Constitution and laws of the Untied States.
>
> Ground 3. Prosecutor misconduct in violation of appellant's Fifth Amendment right's [sic] under the Constitution and laws of the United States.
>
> Ground 4. Appellant's guilty plea was unknowingly and involuntarily made which violates appellant's due process of law pursuant to the Fifth Amendment of the United States Constitution
>
> Ground 5. Illegal arrest and search and seizure in violation of appellant's Fourth Amendment rights under the Constitution and laws of the United States.

2

(1:06 CR 271)

The petitioner-defendant's motion for a certificate of appealability concludes with the following paragraph:[1]

> "Appellant has made a substantial showing of the denial of constitutional rights. The District Court erred in its ruling denying Appellant's 28 U.S.C. § 2255 Motion. Appellant should have been granted an Evidentiary Hearing to establish the fact that his constitutional rights were violated.
>
> Appellant's trial counsel was ineffective during the court proceedings because he failed to conduct a thorough and independent investigation of the government's case. Counsel failed to seek exculpatory Brady evidence from the government regarding Agent Lucas' perjury and misconduct in past investigations. Counsel aided the government in obtaining a coerced plea agreement based on false information, and perjured testimony which counsel knew or reasonable [sic] should have known to be suspect. Counsel informed Appellant that a jury trial would find him guilty off [sic] Agent Lucas' perjured testimony, the same way the District Court made a ruling with the Government off [sic] Agent Lucas' perjured testimony at the Suppression Hearing on December 7, 2006. Counsel failed to interview witnesses favorable to Appellant's defense who could have testified about Agent Lucas' perjury and misconduct in past investigations. If counsel had conducted an investigation of the government's case and sought exculpatory Brady evidence on Agent Lucas, Appellant would not have plead guilty. If not for counsels [sic] unprofessional errors Appellant would have had a jury trial. Because of counsel's ineffective assistance to Appellant the plea is void. Strickland v. Washington, 466 U S. at 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> Appellant's guilty plea was unknowing and involuntarily entered, since, the government failed to disclose exculpatory Brady evidence which was favorable to Appellant, which is a violation of Appellant's right to Due Process of Law pursuant to the Fifth Amendment of the United States Constitution. If Appellant would have had the Brady exculpatory evidence on Agent Lucas,

---

[1]Docket No. 99, p. 9 through p. 11.

(1:06 CR 271)

>Appellant would have never entered into a guilty plea.  Appellant would have chosen a jury trial.
>
>Appellant wanted to do traverse to the government's response to Appellant's 28 U.S.C. § 2255 Motion, however, he was transferred to Lexington, Kentucky on June 26, 2009, and was waiting for redesignation and did not have access to any legal material to respond to the government's response.  Appellant was transferred to U.S.P. Florence, CO. on 7/31/2009.  Appellant found out once at Florence, Colorado, that the Court had denied his 28 U.S.C. § 2255 Motion on 7/21/2009.  Appellant put court on notice on 7/02/09 that he did not have access to legal material and wanted to do a traverse to the government's response, in order to show that Appellants constitutional rights were violated, and to incorporate case law with his claims and facts in his § 2255 Motion.
>
>Counsel for the Government has violated Rule 16 discovery and inspection.  Government's constitutional disclosure duties are to disclose evidence favorable to Appellant.  Appellant was fearful to have a jury trial because he knew the government was going to have Agent Lucas as their Key Witness against him at trial.  Counsel for the government knew that Agent Lucas framed Appellant with perjury and misconduct.  Counsel for the Government said on record at the Sentencing Hearing, page 16 lines 15, 18, that Appellant accused Agent Lucas of misconduct.  The government knew Agent Lucas had credibility issues for years.  The Government's failure to disclose exculpatory Brady evidence is a violation of Appellants [sic] Due Process rights.
>
>Appellant should be granted a certificate of appealability because Appellant has constitutional rights that have been violated.  Appellant has made a substantial showing of the denial of constitutional rights.
>
>For the above reasons Appellant prays that his Certificate of Appealability is granted forthwith.

## II.  The Suppression Hearing

The transcript of the suppression hearing conducted on December 7, 2006 numbers 96 pages.  The only witness to testify was DEA Special Agent Lee Lucas.  His testimony included

4

(1:06 CR 271)

the observation of a controlled buy of cocaine sold by the petitioner-defendant on May 1, 2006. The subsequent obtaining a search warrant and the warrantless arrest of the defendant on May 2, 2006 which resulted in a search pursuant to a search warrant that resulted in the recovery of the two weapons described in Count 3 and the seizure of cocaine base pursuant to a consent search, also conducted on May 2, 2006.  After the extensive direct examination and cross examination of Lee Lucas, the Court then gave the defendant, Andre Martin, the opportunity to testify in the following exchange:[2]

> ...
>
> THE COURT: You may proceed with your defense, Mr. Ivey, in support of the motion to suppress.
>
> MR. IVEY: Your Honor, we have no evidence to put on.
>
> THE COURT: Well, Mr. Martin, I want to make sure you understand that if you wish to put on testimony now in support of your motion, now is the opportunity.  Do you understand?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand it's your choice as to whether to testify about this?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You can rely upon the advice of your counsel, and certainly I don't discourage you from relying upon his counsel, but the one thing I don't want to hear later in the event you're convicted that you really wanted to testify but Mr. Ivey wouldn't let you testify because you had every right to testify now if you want to.  And if you wish to dispute the testimony of the agent, now is your opportunity.  Do you understand?

---

[2]Transcript docket number 64, p. 81, line 1-23.

5

(1:06 CR 271)

>THE DEFENDANT: Yes, sir.
>
>THE COURT: Is it your wish not to testify?
>
>THE DEFENDANT: I'm not going to testify.
>
>After hearing argument, the Court denied the motion to suppress in the following ruling:[3]
>
>THE COURT: Before I give my ruling, I do want to comment on the exhibits. The government's Exhibit 1 -- I assume you're offering all of the exhibits?
>
>MR. SCHMITZ: Yes.
>
>THE COURT: 1 through 10. Exhibit 1 is the search warrant that was issued for 2762 Loop Avenue by a judge of the Court of Common Pleas of Cuyahoga County, and Exhibit 1 is admitted.
>
>Exhibit 1-A is the affidavit that was submitted in support of the searach warrant that's Exhibit 1, and it appears to be signed by a Detective Matthew, is it Baeppler, B-A-E-P-P-L-E-R, of the Cleveland Police Department. That affidavit is admitted.
>
>Exhibit 2 is stated oral warning to be given to subject prior to investigation, and it contains the Miranda warnings. It also contains the waiver compliance. The form says "You may waive the right to advice of counsel and your right to remain silent and you may answer questions or make a statement without a consent of a lawyer if you so desire. Question, do you understand your rights?" And there's a signature, Andre Martin, yes.
>
>Then "Do you elect to waive them?" and there's Andre Martin, and the answer yes.
>
>And Exhibit 2 will be admitted.
>
>Plaintiff's Exhibit 3 is the search warrant inventory list of 2762 Loop, and it will be admitted and it demonstrates on the face of it

---

[3]Docket No. 64, p. 88, l. 7 through p. 93, l. 10.

(1:06 CR 271)

>that the two weapons were seized there, as well as a magazine and other materials including currency.  There's indication of a bag of marijuana that was seized.
>
>At the time of trial, I guess I will review the question of whether the bag of marijuana should be submitted to the jury.  I have to think about that, but Plaintiff's Exhibit 3 is admitted.
>
>Plaintiff's Exhibit 4 is the consent to search at 1300 Crestline Avenue, Apartment 228, and it bears the signature of Andre Martin.  It says "I have not been threatened or forced in any way.  I freely consent to this search," which of course is of the 1300 Crestline Avenue, Apartment 228.  Plaintiff's Exhibit -- Plaintiff's Exhibit 4 is admitted.
>
>Plaintiff's Exhibit 5 is a consent to search signed by Lekeith Martin, and Plaintiff's Exhibit 5-A is another consent search by Lekeith Martin.   They are both admitted.
>
>Plaintiff's Exhibit 6 is the search warrant inventory list for 1300 Crestline, Apartment 228, and it reflects item Number one, $1,700 of currency.  Two, suspected crack cocaine, two bags, second bedroom.  Three, MD Serial digital scales with residue, second bedroom closet.  Four, miscellaneous ammunition.  Five, mayonnaise jar with suspected residue.  Six, Cav's jacket. and seven, Pyrex bowl with residue.  That Exhibit 6 is admitted.
>
>Exhibit 7 is a report of pretrial services and it purports to be the record of Mr. Martin.  In my view, that is not a proper exhibit at this stage of the proceedings and it will not be admitted.
>
>Plaintiff's Exhibit 8 is a photograph of the door to 2762-B.  That is admitted.
>
>Exhibit 8-A purports to be another photograph with keys in the door.  Plaintiff's Exhibit 8-B appears to be photograph of a closet.  Plaintiff's Exhibit 8-C is a bag.
>
>Was there some suggestion that there was weapon found here?  I don't see anything here about a weapon.  Maybe I'm missing it.
>
>MR. SCHMITZ: There's ammunition, Your Honor, at Crestline, I

(1:06 CR 271)

>believe, but no gun.
>
>THE COURT: All right.  And Plaintiff's Exhibit 8-D is the photograph of a weapon, two weapons and that was from Crestline?
>
>MR. SCHMITZ: The two weapons are at Loop.
>
>THE COURT: Excuse me.  That's correct.  And Exhibit 9, I gather, is the so-called Cavalier jacket?
>
>MR. SCHMITZ: Yes, Your Honor.
>
>THE COURT: And 9-A purports to be a photograph of the pocket apparently of the Cavalier jacket showing a bag of white substance, and I assume that's what's alleged to be he crack cocaine?
>
>MR. SCHMITZ: That's correct, Your Honor.
>
>THE COURT: That will be admitted.  The criminal complaint, Exhibit 10, signed by -- it's in blank, but I gather that's what's purported to be the complaint that was filed by Mr. Lucas and it's not signed.  I think I will exclude that from the evidence.  So those are the exhibits that are admitted and those are excluded; 7 and 10 are excluded.
>
>Now, getting to the ruling, I think the critical issue here in this case is whether there was probable cause to justify the warrantless arrest on May 2 of the defendant and the court finds that there was probable cause to make the warrantless arrest.
>
>One could argue that the government could have gotten an arrest warrant based on the information that they're relying upon to make the warrantless arrest, but as I understand the law, there's absolutely no requirement to have an arrest warrant if you got a probable cause warrantless arrest situation in my view.  The testimony by Agent Lee Lucas more than justified a warrantless arrest based on what took place on May 1.
>
>The next question is whether the search of the two residences were justified and the search of the Loop residence was based upon a

(1:06 CR 271)

> search warrant that is Plaintiff's Exhibit 1 and it's supported by Plaintiff's Exhibit 1-A which is the search warrant affidavit. I have studied the affidavit and I find that the affiant provided probable cause to justify the search that was issued by the Common Pleas Judge of Cuyahoga County. So the search of the Loop address was appropriate.
>
> The defendant then executed a consent to search the Crestline Avenue property and the court finds that that was voluntarily given by the defendant, that it was not a product of any pressure or intimidation. He had every right to refuse to sign it. There's no testimony that he was forced to sign it, and Plaintiff's Exhibit 4 demonstrates that Mr. Martin did consent to the search.
>
> Exhibits 5 and 5-A demonstrate the Lekeith Martin also consented to the search. The court finds that the search of the property at Crestline was a lawful search and so the motion to suppress that search will be denied, as well as the statements made by the defendant. The oral statements made by the defendant were freely and voluntarily given and they were after the defendant had waived his Miranda rights. There's absolutely no evidence to demonstrate that the statements were involuntary to require the suppression.
>
> So the motion to suppress is denied in its entirety, and we will proceed to trial on Monday of next week.
>
> ...

### III.  The Guilty Plea

The trial had been scheduled to begin the week following the denial of the defendant's motion to suppress. However, on the same day, December 7, 2006, the defendant entered a plea of guilty. Portions of the transcript of the guilty plea hearing follow:

> THE COURT: Let the record show that the court is back in session in United States of America versus Andre Martin, Case Number 1:06CR271.
>
> Earlier today the court conducted the suppression hearing in

9

(1:06 CR 271)

>response to the motion filed by the defendant.  The court overruled the motion and has now been informed verbally that there may be a change in the status of the case.  Is that accurate?
>
>MR. IVEY: That's correct, Your Honor.
>
>THE COURT: Do you want to enlighten me as to what the disposition that's being suggested is?
>
>MR. SCHMITZ: Yes, Your Honor.  Your Honor, the parties have worked out the following plea agreement which has not been reduced to writing and will be simply an oral plea agreement.
>
>Under the terms of that plea agreement, the defendant will plead guilty to Counts 2 and 3.  The government will agree to move for dismissal of Count 1.  The government will agree to recommend a reduction of three levels for acceptance of responsibility, and the government will consider a possible reduction if the government determines that the defendant has rendered substantial assistance in the investigation or prosecution of other individuals.
>
>It's understood, Your Honor, that the government is not obligated at this time to make a motion for substantial assistance and that the government will alone decide whether a motion of that nature lies in the future.[4]
>
>...
>
>MR. SCHMITZ: For the record, Your Honor, I believe a limited preplea presentence sentence report was prepared earlier in the case.  I don't know if Mr. Ivey was counsel at that time.  That had only to do with the record only.  I believe it was the probation department's determination or recommendation that the defendant be found to be a career offender based on, I believe, two aggravated assault convictions, Your Honor.[5]
>
>...

---

[4]Docket No. 65, page 2, line 3 through page 3, line 6.

[5]Docket No. 65, page 4, line 14 through 21.

(1:06 CR 271)

> You haven't yet decided to plead guilty, and even though your lawyer has indicated to me that that's your present intention, you're not required to plead guilty. It's your choice and after -- I've got quite a few things I've got to talk to you about before I actually ask you for your plea, and if at that time, you say to me, "Judge, I still want to go to trial," I say "Fine, you can still go to trial."
>
> I want you to recognize that Mr. Ivey has predicted what you want to do but it's your final call and you haven't reached that point yet. Do you understand?
>
> THE DEFENDANT: Yes, sir.[6]
>
> ...
>
> THE COURT: Okay. Before I can accept a guilty plea, I need to find that there's a factual basis for the pleas of guilty to Counts 2 and 3.
>
> And Mr. Schmitz, even though we've been through this in the suppression hearing, because this taking of the guilty plea in fact he elects to involves a transcript, I would like you to dictate in the record what you consider to be the factual basis in support of the guilty pleas to Counts 2 and 3, if, in fact, he chooses to enter the guilty plea.
>
> Le me explain what that's all about, because that may be really confusing before Mr. Schmitz starts.
>
> When I first was involved in the prosecutorial judicial system, I guess my first involvement was when I was a JAG officer in the '50s and I already ran into it in the military -- in the Army, but when I came out of the Army and entered civilian life, there was no such thing as the court having to decide there was a factual basis for a plea of guilty.
>
> And correctly so, the people in charge decided that the judge would hear independent of the guilty plea what the facts were that

---

[6]Docket No. 65, page 5, line 6 through 17.

11

(1:06 CR 271)

> supported the guilty plea, and so that's called determining if there's a factual basis to support the guilty plea. and it's very important to do because sometimes the factual basis doesn't really support the guilty plea, but I've had that happen several times.
>
> I say, "Wait a minute. That's not enough in this particular case," so the factual basis has to be declared by the government and then I have to find there is a factual basis and I know that I sat here and listened to testimony for quite a while and ruled against you in the motion to suppress, but that record will not probably be prepared. That's why I am asking Mr. Schmitz to tell me on the record the factual basis. It may sound kind of silly to you, but that's why we are doing it. Mr. Schmitz.
>
> MR. SCHMITZ: Thank you. If this case were to proceed to trial, the government would show on May 2 of this year, the defendant was arrested on the near west side of Cleveland by agents of the United States Drug Enforcement Administration.
>
> The government would show that the defendant accompanied the arresting officers to an apartment at 2762-B Loop Avenue n Cleveland where the defendant had stored property. The government would show that a search warrant for that location had been obtained. The government would show that a search warrant for that location had been obtained. The government would show that upon arrival at that address, the defendant led the officers to an upstairs bedroom closet where the officers discovered a Glock .45 caliber pistol and a Taurus .357 caliber revolver.
>
> The government would show that the defendant informed the agents that the two firearms belonged to him and explained at that time how he had come to obtain or purchase those weapons.
>
> The government would show that after the discovery of the firearm, the defendant accompanied the agents to a second location where the defendant also stored property, this being the defendant's uncle's residence at 1300 Crestline Avenue, Apartment 228 in Cleveland, Ohio.
>
> The government would show that at that location, the defendant showed officers a Cleveland Cavalier jacket, in which they discovered in one pocket United States currency, but in the other

(1:06 CR 271)

>pocket two bags of suspected crack cocaine.
>
>The government would show that upon the discovery of that suspected crack cocaine, the defendant admitted to the agents that the money and the crack belonged to him.
>
>The government would show that the suspected crack cocaine was submitted to the scientific lab. The lab analyzed the contents of the two bags and determined that it was, in fact, cocaine base or crack and that the net weight of the substance was 142.10 grams. The government would show that the market value of that crack cocaine was in the thousands of dollars and that the defendant possessed that crack cocaine with the intent to distribute it or to sell it.
>
>The government would also show that as of the time of the searches of these two locations, the defendant was legally prohibited from possessing firearm [sic] as a result of felony convictions he had sustained in Cuyahoga County Common Pleas Court for aggravated assault in two different cases, aggravated assault being a crime punishable by a term of imprisonment exceeding one year under Ohio law.
>
>The government will lastly show that each of the two firearm [sic], the Glock pistol and the Taurus revolver were manufactured outside the State of ohio. I believe one of the guns was actually manufactured outside the United States and that each firearm, at sometime after their manufacturing, moved in and affected interstate or foreign commerce.[7]
>
>...
>
>THE COURT: ... Mr. Martin, if you do enter pleas of guilty to Counts 2 and 3, will those pleas of guilty be voluntary on your part?
>
>THE DEFENDANT: Yes sir.
>
>THE COURT: Did anybody promise or threaten or require you to

---

[7]Docket No.65, pages 19, line 11 through page 22, line 25.

(1:06 CR 271)

    plead guilty?

    THE DEFENDANT: No sir.

    THE COURT: Are you satisfied with the representation that Mr. Ivey has provided you to this point?

    THE DEFENDANT: Yes, sir.

    THE COURT: All right. Do you have any questions you would like to direct to me before we proceed to taking your plea?

    THE DEFENDANT: No, sir.

    THE COURT: Is there anything you would like to discuss with Mr. Ivey in private before I ask you for your plea?

    THE DEFENDANT: Yeah.

    THE COURT: Sure. Go ahead.

    (Pause)

    THE COURT: Anything further, Mr. Martin, you want to bring to my attention?

    THE DEFENDANT: No.

    THE COURT: Are you ready for me to ask you for your pleas?

    THE DEFENDANT: Yes, Your Honor.[8]

    ...

    THE COURT: ... May I have the scheduling book? Mr. Martin, I'm going to schedule your sentencing for the noon hour on Friday, May 4, 2007. Now, that's quite a ways away, but that gives you a little more opportunity to attempt to persuade the government that you're entitled to a 5K1 motion for substantial assistance, and

---

[8]Docket No. 65, page 23, line 4 through page 24, line 8.

14

(1:06 CR 271)

> that's something over which I have no control.
>
> I will direct that you -- that the probation department prepare a presentence report. They will interview you and I am sure Mr. Ivey will be with you when you are interviewed, and I want to know a lot about your family history, education, employment history, anything and everything that would be helpful to the Bureau of Prisons when it comes to deciding where to place you.
>
> So take the preparation of that report very seriously. You will be given a copy of it and review it with Mr. Ivey and if there's some suggestions or revisions that you think are appropriate, bring it to his attention and he will talk it over with the probation department. So when I finally have the sentencing hearing, I will have the presented report and to the extent there are any disputes, then I will have to resolve them at that time. Do you have any questions?[9]

### IV. The Court's Denial of the Petitioner's Motion for a Certificate of Appealability

The petitioner appears to believe that the present difficulties of Agent Lee Lucas entitle him to certificates of appealability because had he known of Lee Lucas' difficulties, he would have opted to go to trial rather than plead guilty on the same day his motion to suppress was denied following the testimony of Lee Lucas during the suppression hearing. However, after considering the record as outlined herein, the Court finds that the petitioner has not made a substantial showing of the denial of a federal constitutional right. *See Barefoot v. Estelle,* 463 U.S. 880, 893 (1983). The Court complied with the directives of Fed. R. Crim. P. 11 in taking the defendant's guilty plea. When given the opportunity to challenge the testimony of Lee Lucas during the suppression hearing, the petitioner declined the opportunity. The petitioner did not

---

[9]Docket No. 65, page 25, line 13 through page 26, line 10.

(1:06 CR 271)

attempt to withdraw his guilty plea.[10]  The petitioner has not challenged the factual basis for his guilty plea.  The petitioner has not claimed to be innocent of the crimes to which he entered pleas of guilty.

In sum, the petitioner has not provided a basis to justify the issuance of a certificate of appealability on any of the five grounds submitted.  The application is DENIED.

### V.  Directions to the Clerk

On August 31, 2009, the Sixth Circuit Court of Appeals acknowledged receipt of a notice of appeal by the petitioner.  *See* Docket No. 98.

Consequently, the clerk is directed to mail a copy of this order to the clerk for the Sixth Circuit Court of Appeals to be filed in connection with its case number 09-4043.

The clerk is further directed to mail a copy of this order to the petitioner, Andre Martin, at his address as it presently appears on the docket.

IT IS SO ORDERED.

| | |
|---|---|
|   October 14, 2009 |   */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[10] After the defendant pled guilty and prior to his sentencing, he filed a motion to dismiss or quash the indictment.  *See* Docket No. 49.  The Court denied the motion on February 27, 2007.  *See* Docket No. 50.  The defendant's motion to dismiss or quash the indictment was based on the proposition that the federal court had no jurisdiction over the defendant's alleged offenses.  Nowhere in the motion does the defendant assert his innocence or in any way suggests that he had been denied the effective assistance of counsel or the testimony of Lee Lucas was perjured.